67 P.(2d) 250

## CAVENDER v. PHILLIPS et al.

### No. 4140.

Supreme Court of New Mexico.

April 6, 1937.

Otto Smith, of Clovis, for appellants.

Hatch, Grantham & Houk, and Mayes & Rowley, all of Clovis, for appellee.

BICKLEY, Justice.

From a decree for the appellee (plaintiff below) against appellants (defendants below) quieting title to certain real estate, this appeal has been prosecuted. Only one proposition requires discussion.

The complaint contains a statutory action to quiet title. An answer was filed by one of the defendants (appellant), containing denials and certain affirmative allegations assailing the validity of a tax deed relied upon by plaintiff as the source of his title. A demurrer was filed to the affirmative portions of the answer upon the ground principally that the allegations thereof fail to state facts sufficient to constitute a defense to the cause of action set forth in plaintiff's complaint. This demurrer was sustained and appellant declined to amend; whereupon judgment was entered for appellee.

We assume that when the court ruled upon the demurrer there was presented to him the same picture that is presented to

us in the pleadings and briefs of counsel for appellant. So viewing it, it appears that the appellant had been the owner of the property involved; that said property was sold for delinquent taxes and never redeemed; that a tax sale certificate describing said property was issued to Curry county, filed for record, and thereafter by the county sold and delivered to Walter W. Mayes, one of the attorneys for appellee, who delivered same to the treasurer and tax collector of Curry county, who, in turn, issued the tax deed in exchange therefor to appellee; that the said Walter W. Mayes attempted to assign the certificate to plaintiff by indorsement; that said indorsement by Mayes was made in blank; that the name of plaintiff did not appear therein; that it was not dated; that no consideration was specified therein; that the name of plaintiff to whom the tax deed in question was issued appeared no place in the tax proceedings until he appears as grantee in the tax deed. It is assumed that plaintiff, the physical holder of the certificate, presented it to the treasurer and demanded the deed which was issued to him, or that said certificate was presented to the treasurer and demand made by his attorney, Walter W. Mayes, that deed be executed to plaintiff. From these representations, it is claimed that the county treasurer acted in an unwarranted and illegal manner in delivering a tax deed to the plaintiff, and that consequently said tax deed is void.

Appellant relies almost exclusively on the decision of the Territorial Supreme Court in Territory v. Perea, 6 N.M. 531, 30 P. 928. It was held: "In a proceeding by mandamus, by a holder of a certificate of tax sale, indorsed in blank by the original purchaser, to compel the sheriff and ex officio collector of Bernalillo county to execute and deliver to him a deed to the land sold, where it appeared that the defendant, by the order of the board of county commissioners, had previously made and delivered to the administrator and legatee of the original purchaser a deed to the land, after the time of redemption had expired; that the proceedings before the board were regular; and that, at the time of the execution and delivery of the deed, there was no assignment of such certificate of record in the office of the probate clerk,—Held: The sheriff had no power to execute a second deed to the land, while the first deed remained uncanceled, and the court below properly refused to grant a peremptory writ of mandamus to compel him to do so." Not only is that decision not a binding precedent in the case at bar, but the reasoning therein has been rendered inapplicable because of the changes made in the tax statutes since the time that decision was rendered. The real question decided by the court in that case was that the respondent had no power to issue another tax deed for the reason that by the issuance of the tax deed previously issued he had exhausted his legal authority and that compliance with the alternative writ was legally impossible. The court, speaking of the deed which the collector had been ordered by the county commissioners

to make, said: "The sheriff was powerless to resist the order of the board. It was his duty to make the deed. The remedy provided by statute was strictly pursued, and the deed was made as required by law. The sheriff, by the execution of that deed, exhausted his power in the premises, and, so long as that deed remains uncanceled, it is clear that the respondent has no power to execute a deed to the relator."

It is likewise to be noted that the court put much emphasis on the fact that the application of the statute relative to assignment of tax sale certificates was made to a mandamus case and not to a suit in equity.

In considering the views of the Supreme Court of Iowa, for which our court manifested a respect, and in differentiating it, the first thing Judge McFie said after the citation (Swan v. Whaley, 75 Iowa, 623, 35 N.W. 440) was: "This was an action in equity to cancel a deed." That was one distinguishing feature. The court emphasized this in concluding its argument on the subject by saying: "*We do not hold* that the signing of the name on the back of the certificate, for a valuable consideration, with the intention of transferring the certificate, would not give the holder such an equitable interest in the certificate and the rights accruing by virtue of it as would enable him to enforce them in a court of equity, but we are of the opinion that the transfer of the certificate, *under the circumstances shown in this case, did not operate to convey the legal title therein* to the relator, so as to enable him to maintain an action of *mandamus*." (Italics ours.)

Black on Tax Titles, in section 316, says: "But in some of the states, it has been provided by statute that such certificates 'shall be assignable by indorsement.' There is, however, some difference of opinion as to the proper construction of such a statutory provision. We find one case holding that the mere writing of his name by the purchaser on the back of the certificate does not constitute an 'indorsement,' and that a person to whom the certificate is delivered by the purchaser, with his name so written upon it, has no authority, by virtue of such delivery, to write a formal assignment thereof above the signature. But this view is not sustained by the weight of authority. On the contrary, the authorities appear to agree that the design of such a statute is to make the certificate quasi negotiable, so that it may pass from hand to hand, carrying all rights with it, by a mere indorsement in blank."

The one case cited is Territory v. Perea, supra. However, we do not quarrel with the dictum of Judge McFie in that case. We merely say it is not persuasive in the case at bar.

There are a number of distinguishing features between that mandamus action and the case at bar, which is a suit in equity. Some of them are of greater importance than others, but we will mention several. The indications are that our Territorial Supreme Court would have been inclined to adopt the holding of the Iowa

Supreme Court in Swan v. Whaley et al., 75 Iowa, 623, 35 N.W. 440, if it had before it for consideration a case to be determined upon equitable principles. In disposing of that case as affording a precedent in the mandamus case, our court called attention to the fact that the Iowa Code provided that when the assignment of the certificate is made the right and title of the assignor immediately vests in the assignee without depending upon any further or future contingency. Our then existing territorial statute (Comp.Laws § 2885) provided to the contrary; it therein being declared: "When the assignment of a certificate is entered upon the record of sales in the office of the probate clerk, it shall vest in the assignee or his legal representatives all the right and title of the original purchaser." Judge McFie went on to say: "1..c assignment, therefore, under the statute of New Mexico, is conditional upon something being done by the assignee to have the right and title of the original purchaser vest in him, and, until this is done, the right and title of the original purchaser does not pass to the assignee. * * * 'A certificate of purchase at a tax sale does not convey a legal title. It is, however, evidence of an equitable title to the land, and enables the purchaser to call in the legal title.' These certificates are the foundation of title, and may ripen into full and complete legal title. * * * Assignments of such certificates are required to be entered of record in this territory before the title to them vests in the assignee." Our Territorial Supreme Court was considering statutes existing in 1892. In 1921 our Taxation Code was entirely overhauled and rewritten, being chapter 133, Session Laws 1921, which controls the case at bar. By section 442, the effect of the tax sale certificate was declared as follows: "The tax sale certificate, when recorded, shall vest in the purchaser, his heirs or assigns * * * a complete legal title to the property described therein, subject to redemption as provided by law." The effect was to convey a complete legal title subject to defeasance by redemption, which was directly contrary to the effect of the statutes under consideration in the Perea Case; there the certificate being merely evidence of an equitable title which would ripen into a complete legal title only after the period of redemption had expired. Furthermore, the requirement of the statutes existing at the time of the Perea decision that assignments be recorded was dropped when the 1921 Tax Code was formulated, or prior thereto. We discover nothing in the Tax Code requiring the recordation of assignments. The law requires that the tax sale certificate be recorded and recordation of the certificate is requisite for the vesting of complete legal title "in the purchaser, his heirs or assigns." We discover no requirements for further recordation of the certificate of sale after an assignment or successive assignments have been indorsed thereon. The change in our system of effectuating tax titles since the decision in the Perea Case has minimized the import-

ance of that case to a degree, particularly as some of the reasons for the decision no longer exist.

The court in the Perea Case invoked the argument that it would be a dangerous thing to permit a person claiming to be the holder of a certificate to write a formal assignment over the alleged signature of the assignor after his death. The court suggested that as an assignment is a conveyance, the form of the assignment might be explained by testimony which would disclose whether his act of indorsement on the certificate was intended to be a conveyance or not. Manifestly under the facts in the Perea Case and in a mandamus action, where the officer could not be required to perform an act other than ministerial, and not then unless it was clearly his duty to perform it, and concerning which he would have no discretion to refuse performance, the fact that Moore, the purchaser at the tax sale and the holder of the certificate, was dead before the assignment was written in above Moore's signature on the certificate was an important factor in the court's conclusion. The court said that since Moore's mouth was closed, the adversary of his heirs or personal representative ought not to be permitted by his acts to reflect facts which had occurred before Moore's death. A much less strict view can be taken in the case at bar. Here it appears from the record in an equity case that Walter W. Mayes, to whom the tax sale certificate had been originally issued and who had assigned it in blank to Cavender, the plaintiff, was in court as Cavender's counsel. Not only was Mayes' mouth not closed, but he was opening it to urge the integrity of his assignment of the certificate to Cavender. These differences in circumstances existing in the Perea Case and in the case at bar reflect the differences in the effect that the application of principles may have to divergent situations.

Portions of the decision in the Perea Case may still be useful in another mandamus case, but it places no restraint upon us in the case at bar. The difference between the way the matter comes up, whether in a mandamus case or in an equity suit, may be very important.

We think our decision in State ex rel. McFann v. Hately, 34 N.M. 86, 278 P. 206, affords illustration of this. We there held that one who had no interest in real estate, but desires to purchase a tax title thereon, could not complain because the county treasurer permitted the original owner or lienholder to redeem after the expiration of the statutory period of redemption but before such prospective purchaser had acquired any right in the certificate. We said that we did not wish to be understood as holding that the treasurer has the power to extend the period of redemption by oral agreement with the taxpayer, nor waive the utmost diligence and readiness to pay required by law, but we held that where the tax sale certificate was still held and owned by the county and no third person's interests were involved, although the statutory period of

redemption may have previously expired and the county treasurer had accepted the amount which was due from one otherwise having a right to redeem, the rights of the redeemor could not be assailed by one not showing a better right. The action of the county treasurer under the facts in that case involved some exercise of discretion. It is to be very much doubted if the holding in that case would support mandamus to require the county treasurer against his refusal to receive tendered redemption money and permit a redemption after the statutory period of redemption had expired.

In the Perea Case Judge McFie distinguished the Iowa case because the Iowa court said that no assignment was necessary to warrant the treasurer in executing the deed, inasmuch as an Iowa law (Code 1873, § 894) provided that the "lawful holder" was entitled to the deed upon producing the certificate. Section 4100, C.L. 1897, controlling in the Perea Case, provided: "On demand of the purchaser, his heirs or assigns, and on presentation of the certificate of sale, the collector * * * shall make out a deed," etc. If Judge McFie properly appraised the Iowa decision as above noted, then it would more nearly fit our law as it now exists than at that time, because section 452, c. 133, L. 1921, provides that under designated circumstances, "on demand of the holder of the tax sale certificate, presentation thereof to the county treasurer," a deed shall be issued, etc. We think that the object of this provision is to afford the treasurer certain

evidence of who is entitled to the deed when the right to one accrues. If, however, he should, without having the statutory evidence of assignment, execute a deed to the one who in fact and in law was entitled to receive it, the question of its validity would not be affected by the fact that he acted without such evidence. See Swan v. Whaley et al., 75 Iowa, 623, 35 N. W. 440. Of course, this is not to say that if the person who presented the certificate and made demand that a deed be issued to him is not in fact and in law the owner of the certificate, he would acquire any rights in the property involved by virtue of the execution of a deed to him. The real owner of the certificate doubtless could assert his right, title, and interest in and to the property as against a fraudulent interloper or his privies.

We think the phrase employed in section 455, "assignee of the purchaser," is not limited to a person named as assignee in an indorsement on the tax sale certificate. We apprehend that the interests represented by the certificate being a thing of value may be assigned as a matter of law, as for instance to the personal representative of a deceased owner of a certificate, or through execution sale to a creditor of such owner, and that the phrase "holder of the tax sale certificate" to whom the deed may be issued under the provisions of section 452 is broad enough to cover "heir at law," who under section 455, if named as grantee in the tax deed, is presumptively entitled thereto. And such language would seem to be broad enough to embrace any one

who is in law and in fact entitled to the interest represented by the certificate, such as an assignee by operation of law or by indorsement on the certificate. These considerations strongly support the view that "holder" is not limited to a person named in a formal assignment indorsed on the certificate.

■ It will be noted that section 455 does not say that the tax deed is prima facie evidence that the grantee is the holder of the certificate by indorsement thereof. It says that it is evidence that the grantee named in the deed was the purchaser, or his heir at law or his assignee, which suggests, as was held by the Iowa court in Swan v. Whaley, supra, that assignment of the certificate by indorsement affords the treasurer certain evidence of who is entitled to the deed, but is not the only evidence by which it may be established that the physical holder of the certificate is the assignee of the purchaser. See Christian v. Lockhart et al., 31 N.M. 331, 245 P. 249. It thus appears that the facts alleged in the answer do not fully negative the presumption that the grantee named in the tax deed is "heir at law or assignee of the purchaser."

In American Exch. Nat. Bank of City of New York v. Crooks, 97 Iowa, 244, 66 N.W. 168, it was held: "Possession of a certificate of purchase at tax sale (which Code, § 888, declares shall be assignable by indorsement), indorsed with the name of the one to whom it was issued, is prima facie evidence of ownership." The court says: "The land was sold to Charles S. Hazlet, and the certificate of sale issued to him. It came into the possession of the defendant Crooks, and the name 'Chas. S. Hazlet' is indorsed thereon. On the return of the certificate so indorsed, the tax deed issued to Crooks. The point is now made that there is no evidence that Hazlet ever parted with his title or interest in the certificate. We think the facts of possession by Crooks and the indorsement are prima facie evidence of ownership by Crooks. It is provided by Code, § 888, that the 'certificate of purchase shall be assignable by indorsement.' It is conceded on the authority of Swan v. Whaley, 75 Iowa, 623, 35 N.W. 440, that such an indorsement conveys the title upon proof that the parties so intended, but it is thought that the indorsement and delivery are not sufficient evidence of the fact of such intent. The fact of possession alone is some evidence of ownership, and the known purpose of an indorsement generally, and its legal effect in particular cases, strengthen the evidence, so that it is at least a prima facie showing of ownership. The indorsement and delivery were for some purpose, and a transfer of the certificate is the presumable one where no other purpose appears."

We view the matter on the record before us much as did Mr. Justice David J. Brewer in an opinion prepared for the Supreme Court of Kansas in Gardenhire v. Mitchell, 21 Kan. 83. A statute of Kansas provided for transfer of the interest of a tax certificate holder "by a written assignment, indorsed upon or attached to the

same," section 90, c. 107, Gen.St. of Kansas 1868, which we assume the court had under consideration. The action was one in ejectment. The defendant set up a tax deed, and the validity of this deed was the question for decision. In disposing of the contention that the assignment of the tax certificate was invalid, it was said:

"The second objection is, that there was no proof of the assignment of the sale certificate. The deed is itself prima facie evidence of everything, from the valuation of the land up to the execution of the deed, and that includes assignments of the sale certificate. (McCauslin v. McGuire, 14 Kan. 234; Hobson v. Dutton, 9 Kan. 477.)

"But as to one lot, plaintiff offered in evidence the sale certificate, which showed a formal assignment from the county to one Arthur Storms, and on the back the name of Arthur Storms indorsed in blank. No formal assignment from Storms appeared anywhere on the paper, yet the tax deed ran to Jacob Grebe. Counsel contends that such blank indorsement was not an assignment, and that therefore the deed was executed to the wrong party. It will be noticed that neither the county nor Storms is questioning this deed or claiming any interest in the property, and we think the matter is one which does not concern the plaintiff. The county sold to Storms, and contracted at a certain time to give a deed to him or his assignee on surrender of the sale certificate. Grebe, claiming to be the owner, presents the certificate with Storms's name indorsed, and the deed is

made. Now if Storms had not actually sold the certificate to Grebe, he and he alone is wronged, and he must come into court for relief. In Woodman v. Clapp, 21 Wis. [350] 354, the court says:

" 'The deed recites that the defendant was the assignee of Comstock, who was the assignee of the county. The county is concluded by this recital. If not a ratification of the previously unauthorized act of the clerk, it certainly inures to the benefit of the defendant by way of estoppel; and so long as the county is concluded, it is not an objection of which the plaintiff can avail himself in this action.'

"That case goes beyond this, for here the only question is the fact of the assignment; there, in addition, the validity thereof."

In line with the views expressed by Judge Brewer that only one who has a right to challenge the sufficiency of a tax title may be heard to complain of irregularity in the proceedings, see Kreigh v. State Bank of Alamogordo, 37 N.M. 360, 23 P.(2d) 1085; Knollenberg v. State Bank of Alamogordo, 35 N.M. 427, 299 P. 1077; Witt v. Evans, 36 N.M. 365, 16 P.(2d) 60.

Furthermore, we think the provisions of section 455 of the 1921 Taxation Code, when considered in the light of section 435 of said act, have a material bearing on the case. Section 455 provides in terms that tax deeds shall be prima facie evidence in all courts in all controversies and suits in relation to the rights of the purchaser, his heirs and assigns, to the lands

thereby conveyed of certain facts. Nine are enumerated, some of which we quote:

"First. That the real estate conveyed was subject to taxation for the year, or years, stated in the deed.

"Second. That the taxes were not paid at any time before the sale. * * *.

"Eighth. That the grantee named in the deed was the purchaser or the heir-at-law, or the assignee of the purchaser."

Section 435 provides that no attack on the title to any property sold at a tax sale in accordance with the provisions of said act shall be entertained by any court, nor shall such title be invalidated by any proceeding, except upon the ground that the taxes were paid before the sale or that the property was not subject to taxation.

It thus appears that the tax deed is properly only prima facie evidence of the first and second facts enumerated since they may be controverted. It would seem, however, that as to facts enumerated in section 455, which are not jurisdictional in their nature and which under section 435 may not be controverted, and the non-existence of which may not be lawfully urged in any attack upon a tax sale or title, the effect of the tax deed is to make it more than prima facie evidence of such nonjurisdictional enumerated facts; in fact, construing section 435 with section 455, there is strong reason for claiming that the tax deed as to facts enumerated which do not fall within the class of "essentials of taxation" is conclusive evidence thereof.

We have several times held that the restriction of defenses to tax sales and titles to the fact that the tax had been paid or the property was not subject to taxation was a valid exercise of legislative power. See Manby v. Voorhees, 27 N.M. 511, 203 P. 543; Witt v. Evans, supra; and the Iowa Supreme Court in Allen v. Armstrong, 16 Iowa, 508, upon the same argument expressed the view that it is competent for the Legislature to say that a deed shall in the purchaser's favor be conclusive evidence as to certain facts not falling within the class of essentials of taxation.

Finding no error, the judgment will be affirmed, and it is so ordered.

HUDSPETH, C. J., and SADLER and ZINN, JJ., concur.

BRICE, Justice (dissenting).

To maintain his action to quiet title the plaintiff must have some title in the real estate that can be quieted. He must succeed on the strength of his own title, and not on the weakness of his adversary's. If he has no title then he cannot recover, though the defendant may have no title. If he does not have to show a title, good against the whole world, he at least must show one superior to that of the defendant. This court, in Abeyta et al. v. Tafoya, 26 N.M. 346, 192 P. 481, said:

"The rule is well stated by the Circuit Court of Appeals (Ninth Circuit) in the case of Ripinsky v. Hinchman, 181 F. 786, 105 C.C.A. 462, as follows:

" 'The general rule, in a suit to quiet title or to remove a cloud, as well as in ejectment, is that the plaintiff must succeed upon the strength of his own title, and not on the weakness of that of his adversary. The very idea of removing a cloud from title presupposes that the plaintiff has a title of some order to defend or to relieve of an alleged or threatened incumbrance or cloud.' * * *

"This being the rule, it must become a question of fact as to whether appellants showed title."

· In Stanton v. Catron, 8 N.M. 355, 45 P. 884, 888, the Territorial Supreme Court stated: "The allegation and proof of title have ever been the basis of this form of action in courts of equity prior to the adoption of the statutes in the several states upon this subject. It has ever been the title of the plaintiff which he has sought to have quieted against the demands of an·adverse interest. It is his title which is the groundwork of the action. Can it be said that the legislature, in their enactment of these statutes to quiet title, have done away with the necessity of alleging and establishing the very thing which they intend the court shall determine and quiet, to wit, the title of the plaintiff."

Appellee alleged that he owned the real estate involved, in fee simple. This is the title he seeks to quiet. If he has no title, then the case should be reversed with instructions that it be dismissed.

The demurrer to the answer admits that appellee's title depended upon the validity of a tax deed issued to him on his demand by the county tax collector, under authority of section 452 of chapter 133, N.M. Sess.L.1921 (hereinafter set out), upon his presentation of a tax sale certificate indorsed in blank by the assignee of the county; and that he has no other evidence of title.

Sections 445 and 452 of chapter 133, N.M. Sess.L.1921, providing for assignment of certificates of tax sales and the execution and delivery of tax deeds, are as follows:

(445) "Certificates of sale shall be assignable by endorsement only. When issued to the county the said certificates may thereafter be sold and assigned to anyone first applying who will pay the face amount thereof, with accrued interest and a recording fee of fifty cents."

(452) "Any time after the expiration of the term of three years from the date of recording the tax sale certificate, where the property has not been redeemed, on demand of the holder of the tax sale certificate, presentation thereof to the county treasurer, * * * the county treasurer shall execute and deliver to said person a tax deed for said property. The said deed shall vest in the grantee, his heirs, successors and assigns, a perfect and complete title in fee simple to said premises, free and clear of all liens and encumbrances except taxes levied thereon prior or subsequent to the year for which the same was sold."

The majority opinion does not clearly state the legal principles upon which this case is decided, but I believe they are as follows:

1. The "holder" of a tax sale certificate is not necessarily one to whom it has been assigned in writing; but a deed may be issued thereon to one to whom it has been delivered by the county or its assignee, with the intent that he shall own it.

2. The record owner of property is not in a position to object to errors and irregularities in the issuance of a tax deed, and the appellant could not raise the question of the invalidity of the assignment of the tax sale certificate or the illegality of the deed.

3. A tax deed is conclusive evidence of the fact "that the grantee named in the deed was the purchaser or the heir at law or the assignee of the purchaser."

I will take up these propositions in the order in which they are named here.

The "holder" of a tax sale certificate is entitled to a tax deed upon his demand upon the county treasurer therefor, accompanied by a presentation of such certificate. This the law provides; but it is plain that only the "holder" of such certificate is so entitled. The original purchaser is of course a holder; but. inferentially such original purchaser and his assignee alone are holders; for such certificates are "assignable by endorsement only." It therefore follows logically that unless appellee was the original purchaser of the real estate involved, or unless the tax certificate was assigned to him by indorsement by one legally authorized, he has no title. The county was the original purchaser, and one Mayes its assignee. The effect of the issuance of the certificate to the county and its subsequent assignment to Mayes is fixed by section 442 of the Tax Code of 1921 (chapter 133) as follows: (442) "The tax sale certificate, when recorded, shall vest in the purchaser, his heirs or assigns, or the county and its successors, a complete legal title to the property described therein, subject to redemption, as provided by law. Counties shall be deemed purchasers within the meaning of this act."

We held in Alamogordo Improvement Co. v. Hennessee et al., 40 N.M. 162, 56 P.(2d) 1127, that the title conveyed by sale of land for the nonpayment of taxes is one in fee simple absolute, created by an independent grant, striking down all previous titles and interests in the property, after the time for redemption had expired. It may be assumed then that Mayes had such title in the property upon the assignment to him of the tax sale certificate, for a tax deed passes no title, and adds nothing to the strength of the title obtained by the execution, delivery, and recording of the certificate and its proper assignment.

We stated in Witt v. Evans, 36 N.M. 365, 16 P.(2d) 60, 61: "Under the statute in question, the deed is of slight importance. The sale itself, applicable from recordation of the certificate, divests the owner of legal title, leaving him a mere right of redemption. Section 442. The right to redeem from the tax here in question lapsed not later than January 27, 1926. Williams v. Van Pelt, supra [35 N.M. 286, 295 P. 418]; Knollenberg v. State Bank, 35 N.M. 427,

299 P. 1077. On that date the county had 'complete legal title,' which, on March 28, 1927, it passed to appellant by assignment of the certificate. Evidently the office of the deed was not to pass a legal title which the grantee already had, nor to divest the original owner of a title which he had already lost. It was preserved in the system as a conventional muniment of title, as prima facie evidence of certain facts, and (originally, but not after repeal of section 458 [Laws 1925, c. 102, § .28]) to prevent reversion of title to the original owner on failure to demand deed within six years."

The English statutes for the prevention of frauds and perjuries, commonly called the "Statute of Frauds" (St. 29, Charles II), is in force in this state, and unless there is statutory exception in case of tax titles, Mayes could only divest himself of title by a sufficient writing signed by him; or by such part performance as would relieve the purchaser of the effect of these statutes; and the payment of the purchase price not accompanied by possession is not sufficient. Osborne v. Osborne et al., 24 N.M. 96, 172 P. 1039; Jones v. Rocky Cliff Coal Mining Co., 27 N.M. 41, 198 P. 284. Title to real property obtained through tax proceedings may be assigned by indorsement and delivery of the tax sale certificate, and this is the foundation of appellee's claim. If the indorsement of the tax sale certificate in blank and its delivery to appellee divested Mayes of title and vested it in appellee, the case should be affirmed; but if it did not, then appellee had no title to "quiet" and though appellant has no title, the appellee's case has failed. Appellant has had possession of the property for many years, paying taxes as they accrue, and this, in any event, is a sufficient defense as against a claim of one who has shown no title to the property.

A tax deed issued without a performance of the statutory requirements authorizing its execution and delivery is void. Black on Tax Title, § 384; Wells v. Bloom et al., 96 Neb. 430, 147 N.W. 1112; De Ford v. Smith, 23 Colo.App. 78, 127 P. 453; City of Chicago v. Collins et al., 302 Ill. 270, 134 N.E. 751; Smith v. Todd, 55 Wis. 459, 13 N.W. 488, 489; People v. Banks et al., 272 Ill. 502, 112 N.E. 269; Empire Ranch & Cattle Co. v. Coldren, 51 Colo. 115, 117 P. 1005; Palmaffy v. Cort et al., 100 N.J.Eq. 99, 135 A. 463; Scott v. Warden, 111 Cal. App. 587, 296 P. 95; Dennis v. Robertson, 123 Va. 456, 96 S.E. 802; Wilson v. Wood, 10 Okl. 279, 61 P. 1045; Pitkin v. Reibel, 104 Mo. 505, 16 S.W. 244; Dimpfel v. Beam, 41 Colo. 25, 91 P. 1107; Pratt v. Pope, 78 Fla. 270, 82 So. 805. The rule is thus stated in 61 C.J., title Quieting Title, § 1872: "* * * Since the purchaser's right to acquire a valid title at a tax sale is statutory and in derogation of the common law, any provisions of the statute imposing on the tax purchaser the duty of complying with prescribed conditions or obligations before taking out his deed are to be considered mandatory and essential to the validity of the deed, and must, therefore, be substantially complied with." I find no law to the contrary. The solution of the problem then depends upon whether

Mayes' indorsement in blank was an "assignment by endorsement" as required by section 445 of chapter 133, N.M.Sess.L. 1921, supra. This requirement is mandatory, and unless the tax sale certificate was "assigned by endorsement," it was not assigned at all, and the deed executed by the county treasurer to appellee was void because it was executed and delivered in violation of a mandatory statute.

Some courts sustain the view that an indorsement in blank is sufficient to comply with such statutes upon the theory that tax sale certificates are chattels, title to which may pass by sale and delivery alone; and if the statute is not technically complied with, the purchaser is authorized to add the assignment above the signature of the assignor to conform to the statute. Swan v. Whaley, 75 Iowa, 623, 35 N.W. 440; Chrisman v. Hough et al., 146 Mo. 102, 47 S.W. 941; Larson v. Glos et al., 235 Ill. 584, 85 N.E. 926. This class of cases treats the certificate as having some of the qualities of a negotiable instrument, or at least a chattel which, except for the statute, would pass by bargain and sale. On the other hand, it is held by other courts that such certificates are not chattels and not assignable by indorsement in blank, though not a conveyance of real estate. Territory ex rel. Gildersleeve v. Perea, Sheriff, 6 N.M. 531, 30 P. 928; Dawson v. Anderson, 38 Okl. 167, 132 P. 666; White et al. v. City of Brooklyn, 122 N.Y. 53, 25 N.E. 243; Wilson v. Wood, 10 Okl. 279, 61 P. 1045; Horn v. Garry, 49 Wis. 464, 5 N.W. 897; Reed v. Merriam, 15 Neb. 323, 18 N.W. 137.

The Territorial Supreme Court, in Territory v. Perea, 6 N.M. 531, 30 P. 928, 930, reviewed the authorities as to the meaning of "assignment by endorsement" to which we can add but little in support of the conclusion reached. It was said, "The word 'indorsement' has its primitive and popular sense of something written on the outside or back of a paper, on the opposite side from which something else had been previously written," and concluded: "From these general definitions we are inclined to agree with the defendant in error that to write the name upon the back of an instrument would be a proper assignment when applied to negotiable paper, but, as applied to nonnegotiable instruments, such as certificates of purchase at tax sale, the terms of assignment should be written upon the instrument, as well as the name of the assignor, unless there is a specific provision of law that to sign the name upon the back of the instrument is a sufficient assignment to transfer the right, title, and interest of the owner to the assignee." That this is correct, we think is supported by authorities generally, and particularly by the following: Powell v. Commonwealth, 11 Grat. (Va.) 822. "The word 'indorsement' has not a definite technical meaning in law or in fact other than 'upon the back;' and its meaning is always determined by the context, if in writing, and its connection, if by spoken words. It is as applicable to the receipt of a payment upon the note as to a party to the note, and properly includes filing, or any other memorandum which a person may place upon the back of an in-

strument. It includes not only such entries as pertain to the contract itself, but many entries which may have no relation to the contract. It may relate to things material to the subject of the contract, or to persons who are parties to the contract, or to such as are entirely immaterial to either." Commonwealth v. Spilman, 124 Mass. 327, 329, 26 Am.Rep. 668; Burnsville Turnpike Co. v. State, 119 Ind. 382, 20 N.E. 421, 3 L.R.A. 265; Johnson v. Brewer, 134 Ga. 828, 68 S.E. 590, 31 L.R.A.(N.S.) 332; State v. Cordray, 200 Mo. 29, 98 S.W. 1, 9 Ann.Cas. 1110; Kramer v. Spradlin, 148 Ga. 805, 98 S.E. 487. "Assignment by endorsement" means literally an assignment written on the back of an instrument.

Assignments by indorsement in blank generally apply to negotiable instruments, and not only pass title to such instruments but are implied contracts to pay them at maturity upon the default of the makers. They have no reference to the assignment of interest in real estate or personal property other than negotiable instruments, in regard to which by statute or usage, technical assignment in writing has been dispensed with. The words "assignment by endorsement" as contemplated by the New Mexico statute in question mean a writing on the back of the tax sale certificate sufficient to transfer to another the interest of the original holder of the tax sale certificate in the real property described therein, and is not substantially complied with by the writing of the holder's name on the back of such certificate.

The authorities are divided on whether a tax sale certificate that is not a conveyance of real estate is assignable by indorsement in blank, but no case holds that property described in a certificate which is in effect a deed or conveyance of real estate can be transferred by endorsing a certificate in blank.

There are but few authorities on the question, and I will here review all that I have found; though the Territorial Supreme Court has held that a blank indorsement did not comply with a similar statute.

It was held in Territory ex rel. Gildersleeve v. Perea, Sheriff, 6 N.M. 531, 30 P. 928, after a careful review of the authorities, that a tax certificate could not be assigned by indorsement in blank. The following is from the syllabi:

"The writing of his name in blank by the purchaser on the back of a certificate of tax sale is not sufficient to constitute an 'indorsement,' within the meaning of section 2885, Compiled Laws [Code 1884], providing, that such certificates 'shall be assignable by indorsement.' By the words 'assignable by indorsement' is meant that the assignment itself as well as the name of the assignor shall be written upon the instrument; and a holder of such a certificate, signed on the back by the purchaser in blank, is not authorized to write an assignment above such signature.

"The mere delivery to another of a certificate of tax sale by the original purchaser, with his name written in blank on the back, vests no right or title in the holder."

The statutes construed were sections 2885 and 2892, Comp.Laws 1884, and are as follows:

(2885) "The certificate of sale shall be assignable by endorsement, and an assignment thereof, when entered upon the record of sales in the office of the probate clerk, shall vest in the assignee, or his legal representatives, all the right and title of the original purchaser."

(2892) "At any time after the expiration of the term of three years from the date of the sale of any real estate for taxes under the provisions of this chapter, on demand of the purchaser, his heirs or assigns, and on presentation of the certificate of sale, the collector then in office shall make out a deed for each lot or parcel of real estate sold and remaining unredeemed, and deliver the same to the purchaser, his heirs or assigns."

The corresponding sections to be considered here are sections 445 and 452 of chapter 133, N.M.Sess.L. 1921, supra.

The respective statutes are so nearly identical in meaning that unless we overrule the Perea decision we must hold that the mere writing of the holder's name on the back of a tax certificate did not effectuate its assignment.

Said section 452 was an amendment of a prior statute, which follows: "At the expiration of the time for redemption, if such property be not redeemed, the county treasurer upon application by the purchaser or his assignee of any property at tax sale or of any duplicate tax sale certificate, shall execute and deliver to him a deed for the real estate sold; but the execution and delivering of any such deed shall not have the effect of releasing or extinguishing the lien on the property for any unpaid taxes thereon, whether levied before or after the date of the certificate referred to in section 5502." Section 5506, Code 1915.

This statute was construed in Christian v. Lockhart et al., 31 N.M. 331, 245 P. 249, in which we held that a warranty deed from the holder of a certificate was a sufficient assignment to pass title, stating:

"It is to be observed that this statute does not in terms require the assignment of the certificate itself, but contemplates that the assignee of the rights of the purchaser shall be entitled to the deed. A conveyance by warranty deed certainly conveys all of the rights of the vendor in and to the land and in and to all remedies and claims whereby title may be perfected and protected. Here the original assignee had a right and interest, when he conveyed, to present his tax certificate and obtain a deed when the period of redemption had run. This right passed to his vendee under his warranty. See 18 C.J. 'Deeds,' § 276; Vos v. Dykema, 26 Mich. 399.

"Counsel for appellants cite, in opposition to this conclusion, State v. Winn, 19 Wis. 304, 88 Am.Dec. 689. An examination of that case, however, shows that the Wisconsin statute required an assignment on the back of or attached to the tax certificate, which renders the case inapplicable here."

The intimation is that if the law had provided only that the assignee of a certificate was entitled to a tax deed (as it does now), then a warranty deed would not be sufficient basis therefor; but as the statute authorized the issuance of a tax deed either to the *assignee of the property,* or of the certificate, an assignment of the certificate was unnecessary if the property was assigned.

The majority suggest that the Perea Case was a proceeding in mandamus, and the court in its opinion suggested that it did not hold that the assignee did not have rights that could be enforced in a court of equity. I will refer to that matter later, but at this place I wish to emphasize that it was held in the Perea Case that such indorsement in blank did not comply with the statute. The majority opinion states that the law has been amended since the decision in the Perea Case; that under the statute here involved title to real property is conveyed to the holder, whereas title did not pass under the law construed in the Perea Case. This is true, and all the more reason, as we shall see later, why a strict compliance with the law is necessary to convey title; but is no reason why almost identical statutes should be construed differently. The meaning of "assignment by endorsement" is not different because of the amendment. The Perea Case was decided approximately thirty years before the act of 1921 was passed; notwithstanding which, the Legislature substantially reenacted the laws therein construed. Under such circumstances we should adhere to its holding.

I know of no other state whose court has passed on the question having a law that vests title by tax sale certificate, and this must be kept in mind in determining the effect of our statute. Ordinarily the holder does not obtain title by virtue of the certificate but only rights which entitle him thereto upon complying with the law; whereupon a tax deed is executed to the purchaser or his assigns by an officer who has no interest in the property, vesting title. But it is the law that vests the title. The power of the county treasurer is not coupled with an interest, and his unauthorized acts are void. The question of the effect of such indorsements have been before the courts of a number of states, but I believe in each instance the certificate involved did not vest title. In cases where such indorsements were held sufficient compliance with the law, the certificate was treated as a chattel, subject to bargain and sale, like any other personal property. In this state they are no more a chattel than is a deed; and a blank indorsement thereon is no more effective as a means of divesting title than such indorsement on a deed unless so provided by statute.

The statute of Nebraska required the treasurer to attest the execution of a tax deed with his seal; it was held in Reed v. Merriam, 15 Neb. 323, 18 N.W. 137, that the want of a seal was fatal. The opinion states:

"The certificate was then canceled and filed with the county clerk. Unless the certificate was presented to the county treas-

urer, he had no authority whatever to execute a deed. This was a condition precedent to his right to exercise that authority. In other words, the law makes the return of the certificate the evidence upon which the treasurer has authority to act. There is no power to accept secondary evidence in lieu of the certificate, nor to execute deeds to correct errors in former deeds. The second and third deeds, therefore, being made without authority, are null and void, and it being conceded that the first is invalid, the title to the real estate in question did not pass to the plaintiff. * * *

"Whatever may have been the object of the legislature in requiring the treasurer to attest the execution of a tax deed by his seal, the provision is one that cannot be dispensed with, and the want of a seal is no valid excuse. A treasurer acts under a naked statutory power in executing a tax deed, and unless he complies with the provisions of the statute, the deed will be void."

In Morris v. Bird et al., 71 Kan. 619, 81 P. 185, 186, the Supreme Court of Kansas decided a similar question. It is stated in the opinion: "By the provisions of section 7648 of the General Statutes of 1901, the transfer of a tax-sale certificate must be made by a written assignment indorsed upon the certificate or attached thereto, before the clerk is authorized to issue a deed thereto to the person in possession of the certificate. [Authority.] The holder of a tax-sale certificate properly and regularly issued has an interest in the real estate which cannot be transferred by a mere delivery of the certificate. In order to pass such interest, under our statute, the assignment must be in writing. In Smith v. Todd, 55 Wis. 459, 13 N.W. 488, the court, in passing upon a statute which provided that a tax certificate 'may be assigned by the purchaser by writing his name in blank on the back thereof, and by the county treasurer or the county clerk in like manner, with his official character added, or any person's interest therein, may be transferred by a written assignment indorsed upon or attached to the same,' it was held that 'the county clerk has no authority to issue a tax deed to the second assignee of a tax certificate whose assignment is not indorsed thereon or attached thereto.' On page 464 of 55 Wis., page 490 of 13 N.W., the court said: 'There can be no question that the tax deed so issued and executed in violation of law is absolutely void. Tax proceedings by which the owner of land may be divested of his title must be strictly in accordance with the law. The authority of the county clerk to issue a tax deed must be found in the statute, or it does not exist at all, and the deed he executes without such authority conveys no title.' "

It was held in White et al. v. City of Brooklyn, 122 N.Y. 53, 25 N.E. 243, that such an indorsement in blank did not assign a tax sale certificate; that the certificates were void, but that plaintiff could recover the money paid for them. We copy the following from the syllabi: "Also held, that while the defendant might, for the purpose of performance of the contracts contained in the certificates, have treated the purchasers, as the

parties entitled to the benefit of them until notice was filed, the provision was no defense in this action, as an assignment of the certificates would be in practical effect an assignment of the claims against the city for reimbursement; but that the certificates were not negotiable instruments transferable simply by indorsement; and that the indorsements alone were insufficient evidence to establish title in plaintiffs to the three certificates."

The majority opinion contains a quotation from American, etc., Bank v. Crooks, 97 Iowa, 244, 66 N.W. 168. This decision follows that court in Swan v. Whaley, 75 Iowa, 623, 35 N.W. 440, 441; to which we should look for the reasons supporting the conclusion reached by that court. The following is copied from the opinion in the latter case, in which the same question was decided:

"Section 888 of the Code is as follows: 'The certificate of purchase shall be assignable by indorsement, and an assignment thereof shall vest in the assignee or his legal representative all the right and title of the original purchaser. * * * In case said certificate is assigned, then the assignment of said certificate shall be placed on record in the office of the county treasurer in the register of tax sales.' The contention is that this section requires a formal assignment, transferring to the assignee all the rights and interests of the purchaser, to be indorsed upon the certificate. * * *

"It is contended that Whaley was not entitled to receive a deed of the property from the treasurer, because of the insufficiency of the assignment from Phillips to Fairfield, and of the fact that neither of the assignments under which he held were recorded in the treasurer's office. * * * The certificate of purchase is a mere chattel, and, like any other article of personal property, is the subject of bargain and sale. The provisions of section 888, with reference to the assignment and the recording thereof in the register of tax sales, relate merely to the creation and preservation of the evidence of the sale. They are not essential to the sale itself. A right in and to the certificate which would be enforceable in law can be created without either the execution or recording of any written assignment. The object of the provision is to afford the treasurer certain evidence of who is entitled to the deed when the right to one accrues. If, however, he should, without having any evidence of the assignment, execute a deed to the one who in fact and law was entitled to receive it, the question of its validity would not be affected by the fact that he acted without such evidence."

If this doctrine is sound, of which I have serious doubts, it would not apply to certificates conveying title to real estate. Such certificates are not "mere chattels" subject to bargain and sale like personal property.

There are two other cases of the same holding; based at least inferentially upon the same reasoning as that of the Iowa case, Chrisman v. Hough et al., 146 Mo. 102, 47 S.W. 941, in which that court stated: "Where a purchaser at a tax sale transfers the certificate of purchase to another by a mere indorsement, the latter is authorized in afterwards writing a formal assignment above the indorsement." And Larson v. Glos et al., 235 Ill. 584, 85 N.E. 926, 927, from the opinion in which case we copy the following: "The second ground upon which it is said the decree may be affirmed is that the indorsement and delivery of the certificate, and payment therefor, did not amount to an assignment to Timke. In the absence of a statute, a mere indorsement upon an instrument not negotiable is not sufficient to operate as an assignment of the instrument [authorities]; but section 207 of the revenue act [Smith-Hurd Ill.Stats. c. 120, § 193] provides that the certificate of purchase shall be assignable by indorsement, and that an assignment thereof shall vest in the assignee or his legal representatives all the right and title of the original purchaser. An indorsement consists in writing the name of the holder on the back of the certificate, and such an indorsement, completed by delivery, is, under the statute, operative to effect a transfer of all the right and title of the original purchaser. The indorsement by Glos authorized Timke to write above it a formal assignment, if that had been necessary."

There certificates were treated as chattels; and the words "assignment by indorsement" as meaning the signing of the certificate holder's name on the back thereof. I doubt if the former is correct, and am quite sure the latter has no such meaning except when applied to negotiable instruments, unless specifically so provided by statute. But in any event these holdings have no application here, for the reasons I have stated.

The case of Gardenhire v. Mitchell, 21 Kan. 83, the opinion of which was written by Judge Brewer, is cited by the majority on this question. The weight of an opinion by this great jurist would bear heavily against me if it supported the view of the majority, but it has no application here. The plaintiff in that suit claimed under a father, and a deed from his mother and sister, who were the widow and daughter of the owner. The court held that the tax sale was valid and therefore plaintiff had no title whatever, and without a title to quiet he was held to have no interest in the property and therefore was not an interested party. There was no formal assignment of the certificate from its holder to Grebe to whom the deed ran. The certificate was indorsed in blank, as in this case. Judge Brewer, in the opinion, stated: "It will be noticed that neither the county nor Storms is questioning this deed or claiming any interest in the property, and we think the matter is one which does not concern the plaintiff. The county sold to Storms, and contracted at a certain

time to give a deed to him or his assignee on surrender of the sale certificate. Grebe, claiming to be the owner, presents the certificate with Storms's name indorsed, and the deed is made. Now if Storms had not actually sold the certificate to Grebe, he and he alone is wronged, and he must come into court for relief." The court does not hold that there was a sufficient assignment of the certificate; in fact, it is intimated otherwise; but because the plaintiff had no title in himself it was held that he was not an interested party, and that is as far as this case goes.

The conclusion reached in the subsequent case of Morris v. Bird et al., supra, decided later by the same court, is inconsistent with the majority's interpretation of Judge · Brewer's opinion. The same statute was construed in the two cases and had been construed in the case of Clippinger v. Tuller, 10 Kan. 377, as I am contending, in which Judge Brewer concurred in the opinion. The court in the Clippinger Case stated: "It is true, the plaintiff has a quitclaim deed for the premises covered by the tax-sale certificate from Hidden and Slater to himself. But a quitclaim deed from the holder of a tax-sale certificate is not of itself such an assignment of the tax-sale certificate as will authorize the clerk to issue a tax deed to the grantee mentioned in the quitclaim deed: State v. Winn, 19 Wis. 304, 307. The assignment under the statutes to authorize the clerk to act in such a case must be 'a written assignment *indorsed upon*' or '*attached to*' the tax-sale certificate: Gen.St., 1048, § 90. It must accompany the tax-sale certificate, be filed away with it, and be preserved as evidence in the office of the county clerk."

In Wilson v. Wood et al., 10 Okl. 279, 61 P. 1045, 1046, the court in passing on a like question, stated: "While the tax certificate does not pass title to the land, it is evidence of an equitable interest, which may ripen into a legal title, and therefore does convey an interest in land. The certificate is a part of, and is essential to, the sale. There cannot be a completed sale without it. It is one of the essentials necessary to confer title on the owner, and hence cannot be dispensed with. It is not a negotiable instrument, and cannot be assigned except where authorized by statute. Then the statutory mode of assignment must be followed. In the absence of a statute authorizing an assignment of a tax certificate, the interest in the land of which the certificate is the evidence can only be conveyed in the manner that real estate is conveyed. Where an assignment is made without authority of law, and a tax deed is made to the assignee, the deed will be void. * * * The assignment relied upon was in fact void. Without an assignment, no valid deed could issue to the plaintiff in error; and, as there was no assignment made in the manner required to transfer the interest in the land represented by the tax certificate, it follows that the deed was not valid as against the mortgagee."

The nature of such an indorsement was determined in Horn v. Garry, 49 Wis. 464, 5 N.W. 897, 901, as follows: "It is, as was said by the court in Eaton v. Supervisors, 44 Wis. [489] 490, a purchase of the lands upon condition that the sale shall be void upon payment made as above stated, otherwise to be valid, and entitled the owner of it to an absolute title to the land. It gives the owner an interest in real estate, and such interest can only be conveyed by writing in the manner prescribed by statute. * * * These provisions of the statute clearly show that these certificates are not assignable by mere delivery, but they are treated as instruments giving the owner an interest in real estate, and consequently require an instrument in writing to convey the right of the owner. * * * The cases cited by the learned counsel for the appellant of the transfer of bills of lading or warehouse receipts made to bearer are based upon an entirely different principle. These instruments relate to personal property, the title to which may be passed by delivery, and when there is a sale in fact the delivery of the documentary evidence of title, with intent to transfer the title, is a sufficient delivery to perfect the transfer of the property itself. * * * In the case at bar the evidence shows that the plaintiff did not sell his interest in the property described in the certificates to McMahon, nor did he make any assignment to him of the interest, if he had any, in the lands described therein; and, the certificates having none of the essential qualities of negotiable instruments, the delivery of the instrument itself passed no title to McMahon which he could transfer to another, so as to affect the rights of those claiming an interest in the lands described therein under him by prior title."

Nowhere in the opinion of the majority have I been able to find any definition of "assignment by endorsement," or any definite conclusion as to the effect of a blank indorsement on such certificates; but reasoning from the result, I have assumed it is held that an indorsement in blank is sufficient; in effect, holding that such certificate is a "mere chattel"; which cannot be correct. The statute itself provides that in case of the holder's death, title to the tax certificate (or the real estate it represents) vests in his heirs as other real property and does not vest in his personal representatives. Section 442, c. 133, Sess.L.1921.

My conclusion is that after the time for redemption has elapsed the certificate evidences a title to real estate in fee simple; that an assignment of a tax sale certificate is a conveyance of real estate; that "assignment by endorsement" means a written assignment on the back of the tax certificate, signed by the assignor to the effect that the rights of the assignor in the certificate (if not in the property it represents) are assigned to the assignee.

Whether the tax sale certificate *is itself real estate,* as held in Eaton v. Supervisors, 44 Wis. 489, or in effect a deed to real estate, the rights of the holder do not pass

by its delivery to a purchaser or by blank indorsement and delivery to one. The policy of the Legislature of this state in the matter of sales of real estate for taxes has always been to require a complete record title to be kept; yet this sound policy is destroyed by the majority opinion, which, in effect, holds that a change of ownership of real estate may be effected by mere delivery of a tax certificate after the first blank indorsement. No such loose manner of transferring title could have been intended.

It is said in the majority opinion: "In line with the views expressed by Judge Brewer that only one who has a right to challenge the sufficiency of a tax title may be heard to complain of irregularity in the proceedings."

But, as we have seen, the opinion by Judge Brewer, referred to, has no reference to a defendant in possession, but to a plaintiff who has no title to quiet. I do not find that any of the cases cited under that part of the opinion just quoted, support the quoted statement. The court is not concerned about the defendant's title until plaintiff shows title in himself, and by his demurrer he admits he has no title. The defendant, being in possession, has a better right than a stranger to the title out of possession.

The statute (Laws 1921, c. 133, § 455, subd. 8) provides that a tax deed shall be prima facie evidence of certain facts, among which is: "That the grantee named in the deed was the purchaser or the heir-at-law, or the assignee of the purchaser." It is stated in the majority opinion: "There is strong reason for claiming that the tax deed as to facts enumerated which do not fall within the class of 'essentials of taxation,' is conclusive evidence thereof." I have not been able to discover one such reason. It would be in the face of a statute, except for which the tax deed would be evidence of nothing except its own execution. The statute specifically provides that a tax deed is only prima facie evidence of certain facts, showing conclusively that such facts are subject to being disproved in the absence of curative statutes; and yet the majority hold that such facts are conclusively proved to be true by a paper shown to be void and therefore not a tax deed— "a scrap of paper." A tax deed (not an instrument in the form of a tax deed that is void) is prima facie evidence of certain facts. The instrument in question is assumed to be a tax deed until the evidence proves its invalidity; after which it is evidence (prima facie, conclusive or otherwise) of nothing.

The tax deed is void; the appellee has no title; and the judgment of the district court should be reversed and the cause dismissed.